In the Matter of the Application of RICHARD H. HOFFER, Petitioner, for a Peremptory Order of Mandamus against FRANK X. SCHWAB, as Mayor, and Others, Respondents.

Supreme Court, Erie County, January 13, 1926.

Municipal corporations — zoning ordinance — application for peremptory mandamus order to compel, with consent of council of city of Buffalo, issuance by mayor of said city of permit to use structure as public garage — Buffalo city charter (Laws of 1914, chap. 217, § 13, subds. 6 and 11) does not give council power to enact ordinances regulating public garages — mandamus denied by reason of invalidity of ordinances.

Chapter 31 of the city ordinances of the city of Buffalo, the provisions of which regulate the location and use of public garages within said city, is invalid because of the absence of any grant by the charter of the city of Buffalo (Laws of 1914, chap. 217, § 13, subds. 6 and 11) of power to the council of said city to enact ordinances regulating public garages. Subdivision 25 of section 20 of the General City Law does not grant such power.

The police power cannot be asserted for the purpose of licensing or regulating public garages.

Accordingly, petitioner's application for a peremptory mandamus order to compel, with the consent of the council of the city of Buffalo, the issuance of a permit by the mayor of said city, as provided in chapter 31 of the city ordinances, to use as a public garage for the care and storage of automobiles a structure located within said city, must be denied, since said ordinances are invalid.

APPLICATION for a peremptory mandamus order.

*Harry J. Kelly,* for the petitioner.

*Frederic C. Rupp, Corporation Counsel [Frank C. Westphal* of counsel], for the respondents.

HINKLEY, J. Petitioner seeks peremptory order of mandamus to compel, with the consent of the council of the city of Buffalo, the issuance by the mayor of a permit to use as a public garage, for the care and storage of automobiles, the present structure located on the east side of Elmwood avenue, 195 feet north of North street. There is no disputed allegation of material fact in the petition calling for an alternative order.

Petitioner asks for such consent, and that permit issue as provided in chapter XXXI of the city ordinances and designated as " public

garages." The following are relative portions of sections 1, 2 and 3 of chapter XXXI:

" Section 1. No person, firm or corporation shall use, or permit the use of, any building, structure or premises within the City of Buffalo for the purposes of a livery, boarding or sales stable, public barn where livestock is to be kept, public garage or a public laundry, without first obtaining a permit therefor from the Mayor as hereinafter provided.

" Section 2. No person, firm or corporation shall locate, build, construct or keep in any residence district of the City, a livery, boarding or sales stable, public barn where livestock is to be kept, public laundry or a public garage, without the consent of The Council, such consent to be evidenced by a resolution adopted by the affirmative vote of a majority of all the members of The Council. Any person, firm or corporation proposing or intending to locate, build, construct or keep a livery, boarding or sales stable, public barn where livestock is to be kept, public laundry or a public garage, in any residence district, in addition to the plans, specifications and statements required by law or ordinance required to be filed with the Building Commissioner, shall file with the City Clerk for presentation to The Council, a verified petition.

" Section 3. Upon the consent of The Council, as provided in Section two (2) of this chapter, the Mayor may grant to any person, firm or corporation, a permit to use the building or premises described in the resolution giving such consent, for the purpose of a livery, boarding or sales stable, or public barn where livestock is to be kept or for the purposes of a public laundry, or for the purposes of a public garage."

No specific power was granted by the city charter to the council to enact ordinances regulating public garages as in the case of livery stables, which are included in said chapter with public garages. (Charter of the city of Buffalo [Laws of 1914, chap. 217], § 13, subd. 6.)

The ordinance in question (chap. XXXI), so far as it refers to public garages, was evidently enacted under a supposed authority included in the general powers conferred by section 13, subdivision 11, of the city charter, and section 20, subdivision 25, of the General City Law (as added by Laws of 1917, chap. 483).

The words " as hereinafter provided," at the end of the 1st paragraph of section 1 of chapter XXXI of the city ordinances, together with sections 2 and 3 of said chapter, indicate, as in the case of factory permits to be issued by the mayor, under chapter LVIII of the ordinances, that their issuance is dependent upon the proposed location in residence districts which, under both chapters,

are improperly zoned.    As in the case of factory permits, the entire chapter (XXXI) must fall because of the failure of the council to enact a proper zoning ordinance.    (*Matter of Kensington-Davis Corporation* v. *Schwab,* 239 N. Y. 54.)

Were it possible to sever section 1 of chapter XXXI of the ordinances from the remaining sections of said chapter, there would be no discretionary power vested in the mayor to grant or refuse a permit to erect or maintain a public garage or to regulate that form of commercial undertaking.    Nor would that power exist in the mayor in a case wherein the consent of the council had been given.

There is no more reason or precedent for governmental license and control of a public garage than of a factory or store.    There are no considerations of public health, morals, efficiency or welfare in the conduct of a garage, which do not apply equally to a factory or store.    We must not be confused with the inherent and long-established police power of the government to regulate certain commercial undertakings because of the danger of fraud upon the public, such as ·auctioneers, pawnbrokers, peddlers, etc. (*People ex rel. Schwab* v. *Grant,* 126 N. Y. 473); nor with the undoubted right of the government to control traffic in intoxicating liquors and narcotics because of the inherent danger of that traffic to the health and morals of the community; nor with the right of the government to license certain commercial undertakings as tax measures; nor with the various other exercises of police power in the interest of public health, morals, welfare and, in some States, æsthetics.

In no instance found by the court nor brought to its attention has there ever been given sanction to any exercise of police power licensing or regulating public garages.

The petitioner made application to the council, as directed under chapter XXXI of the city ordinances, as a preliminary to the issuance of a permit by the mayor.    That consent having been refused and such consent being a prerequisite to the issuance of a permit by the mayor, no demand upon the mayor was necessary prior to this application.

This decision is in line with the reasoning of the court in the cases of *Matter of Jacobs* (98 N. Y. 98); *People ex rel. Moskowitz* v. *Jenkins* (202 id. 53); *Hauser* v. *North British & Mer. Ins. Co.* (206 id. 455) and cases which have followed and approved those precedents.

In view of the determination that chapter XXXI of the city ordinances is invalid, no mandamus order can issue requiring either the consent of the council or the issuance of a permit to the petitioner by the mayor.

Application for an order of mandamus denied, with fifty dollars costs to respondents.